OPINION OF THE COURT
Gary F. Knobel, J.
The proposed order settling the final account of the Temporary Guardian presents the last issue to be determined in this Mental Hygiene Law article 81 proceeding: the amount, if any, of the compensation to be awarded to the Court Evaluator, to the Temporary Guardian for T.U., an incapacitated person now deceased, to the court-appointed counsel (Mental Hygiene Legal Service) for T., and to the privately retained attorneys for petitioner P.F., T.’s daughter, and M.U. and P.U., T.’s sons. The determination of this issue within the context of the applicable statutory and appellate authority (see Mental Hygiene Law §§ 81.09 [f]; 81.10 [f]; 81.16 [f]; 81.28 [a]; Matter of Marion C.W. [Lisa K.], 83 AD3d 1087 [2011]; compare Matter of Enna D., 30 AD3d 518 [2006]) has been complicated by the occurrence of two highly unusual circumstances: (1) the incapacitated person who was the subject of the proceeding, and who was adjudicated as such on the record, died after an independent Temporary Guardian was appointed for her personal needs and property management, but before a permanent independent guardian could be appointed in a judgment to perform those duties; and (2) the Judge who made the incapacity adjudication at the conclusion of a hearing, and who reserved decision on an award of reasonable attorneys’ fees for the privately retained attorneys, died before determining that legal question as well as the issue on the amount of compensation to be awarded to the court appointees.
The relevant procedural history is as follows:
In September 2012, P.F. petitioned the court, pursuant to article 81 of the Mental Hygiene Law, for an order and judgment appointing her the guardian for the personal needs and *349 property management of her mother, T.U., who allegedly was an incapacitated person. The matter was assigned to the Honorable Joel Asarch, who appointed a Court Evaluator, and counsel to represent T.U. M. and P.U., through counsel, orally cross-petitioned the court to have themselves appointed guardian for T. and opposed Ms. F.’s request.
On November 5, 2012, the court (Asarch, J.) directed that a hearing on the petitions be conducted on December 13, 2012. The court, in that November 5 order, also appointed a geriatric care manager to, inter alia, assess and report on (1) the personal needs of T.U. while she is in a skilled nursing facility, (2) whether she could be returned to a community residence in either Nassau County, Union County, New Jersey, or King County, Washington, and (3) whether T.U. should be placed in a skilled nursing facility in one of those counties. The November 5 order also restricted the use by P.U. of the power of attorney executed by T. to pay for her necessary living expenses.
The hearing proceeded as scheduled on December 13, at which time M. and P.U., individually through their respective counsel, opposed their sister’s petition and sought to have themselves appointed their mother’s personal needs and property management guardian.
On December 14, 2012, Justice Asarch set forth his decision on the record and found that T.U. was an incapacitated person, as defined in the Mental Hygiene Law, and that he would appoint an independent guardian for both her personal needs and property management. He noted that the family “can’t get along” even though “the three children all love their mother” (tr at 5). He declined to appoint any family member as a guardian or as a co-guardian and implored the family to practice “sholom bayit” (“peace in the house”) instead of having to resort to supervised visitation (tr at 11). Justice Asarch also held that T. was to remain in the Meadowbrook Care Center skilled nursing facility, and was not permitted to be moved from the nursing facility or relocated from Nassau County without prior court approval (tr at 12, 18).
Prior to the conclusion of the hearing on December 14, respective counsel orally requested that the court compensate them from the guardianship account. Although Justice Asarch never formally issued an order awarding reasonable counsel fees, he commented on the subject on the record during the hearing:
*350 “At the present time, the order and judgment shall provide for compensation to the Court Evaluator and to Mental Hygiene Legal Services. I’m keeping open whether I am going to award compensation to petitioner’s counsel. Other counsel, there’s no court authority, statutorily, to provide for compensation, although the Court has done so on rare occasion. I am not certain petitioner is a successful party in this proceeding. But I’m not saying yes and I’m not saying no. I’ll let petitioner’s counsel serve a copy and . . . file a copy of an affirmation of services. But that’s going to require more deep philosophical thinking before I make a decision on that issue” (tr at 17).
Justice Asarch also afforded the attorneys for M. and P.U. “the opportunity” to also submit for his consideration, before he signed the order and judgment on the hearing, affirmations pertaining to the legal services they provided their respective clients in the proceeding (tr at 17-18, 20). He also stated, with respect to counsel fees for the completion of the deed transfer, that “I will be happy to pay for at least the preparation of the deed, reasonable compensation” (tr at 20). Affirmations of legal services were submitted by respective counsel, subject to approval by the court. Although Justice Asarch issued a few orders after the hearing and prior to his sudden passing, he never formally determined by written order any award for attorneys’ fees, and the matter remains undecided. None of the court appointees in this proceeding have been awarded reasonable compensation to date.
Justice Asarch also left open in his December 14 decision on the record the possibility that a temporary guardian could be appointed before the entry of an order and judgment appointing a permanent independent guardian “if there [was] a need” for “somebody” to “act” (tr at 12). That need soon arose to immediately address costs incurred by T. and property concerns, and consequently on January 7, 2013, Justice Asarch appointed Alan Párente, Esq., as Temporary Guardian of both the personal needs and property management of T.U., with specific limited powers and directives aimed primarily at addressing immediate property problems and inter alia marshalling the sum of $100,000 to pay for T.’s cost of care and necessary living expenses. That sum was authorized twice more during this proceeding to cover the costs for those expenses. Justice Asarch set the matter down for a further conference, but passed away *351 before it could be held and before an order and judgment appointing, inter alia, a permanent guardian was submitted for review and signature.
The eight long-form orders which followed Justice Asarch’s order appointing a Temporary Guardian for T. all recite that appointment, and the December 14, 2012 hearing upon which it is based. Conferences continued to be held and orders were issued regarding T.’s property and care. T.’s condition began to deteriorate, and in an order to show cause dated September 13, 2013 (Knobel, J.), the petitioner sought an order discharging T. from the facility she was in and permitting her to relocate to Washington State with the petitioner. Subsequently, in an order dated October 16, 2013 (Knobel, J.), this court directed that an updated assessment be made by the court-appointed geriatric care manager for T. The geriatric care manager recommended that T. remain in her skilled nursing facility; however, T. passed away before a formal hearing could be conducted on the motion.
The contested issue raised in the proposed final account at bar regarding the amount of reasonable fees to be paid to the Temporary Guardian was set down for a hearing (see Matter of Alice D. [Lupoli], 113 AD3d 609, 614 [2014]). That issue was resolved by stipulation after an extensive conference conducted by a court attorney, and this court was asked to determine, based upon the affirmations submitted by respective counsel, the remaining questions on the amount of the fees to be awarded to the court appointees and whether private counsel should be awarded reasonable counsel fees.
Article 81 of the Mental Hygiene Law permits the court, after the death of an alleged incapacitated person, to award court appointees (guardians, court evaluators and counsel) “reasonable compensation” for services rendered by them (see Mental Hygiene Law §§ 81.09 [f]; 81.10 [f]; 81.28 [a]). The statute does not specifically authorize an attorney fee award to an attorney retained by a petitioner following the death of the alleged incapacitated person, even though Mental Hygiene Law § 81.16 (f) permits the court to award reasonable compensation to the attorney for the petitioner “fwjhen a petition [appointing a guardian] is granted, or where the court otherwise deems it appropriate” (emphasis added; see Matter of Enna D., 30 AD3d 518, 519 [2006]). However, the Appellate Division, Second Department, held in Matter of Marion C.W. (83 AD3d 1087) that the court still had the authority to award counsel fees to petitioners’ at *352 torney if the alleged incapacitated person “died after a hearing had been held and a decision had been issued determining that the appointment of an independent guardian of her property was necessary and appropriate, but before a judgment to that effect was entered” (Matter of Marion C.W., 83 AD3d at 1088). The Appellate Division’s rationale was that since the subject guardianship proceeding “had actually been determined when the AIP [alleged incapacitated person] died, . . . only the ministerial act of entering judgment had not yet occurred” (Matter of Marion C.W. at 1088).
The circumstances presented in the proceeding at bar fall precisely within this delineated exception created by the Appellate Division in Matter of Marion C.W. and permit this court, if it is so inclined, to award counsel fees to the attorneys for petitioner P.F. and her brothers M. and P.U. Moreover, the interests of justice, and the broad authority granted to the court in Mental Hygiene Law § 81.16 (f), would not be served if this court did not award reasonable counsel fees to privately retained counsel in this instance.
At the conclusion of the December 14 hearing on the formal and informal petitions for the appointment of a guardian for T.U., Justice Asarch found on the record that the evidence was “clear and convincing” that T. needed assistance with all activities of daily living, that she suffered from significant cognitive impairments, and that T.U. was “an incapacitated person as defined under Section 81.02 of the Mental Hygiene Law in that she is not able to provide for her personal needs and property management” (tr at 3-5). He further determined that an independent guardian, rather than any of her children, would serve T.’s best interests because of the sibling friction between her children (tr at 5-7). Justice Asarch directed that the transcript and the proposed order and judgment that would eventually be submitted to him for his review and signature must recite his findings and directives as spread on the record (tr at 22) and include decretal paragraphs providing for awards of compensation to court appointees and discretionary awards of compensation to the attorneys representing petitioner P.F., P.U. and M.U. (tr at 17). The proposed order and judgment would also “provide for compensation to the [independent] guardian, which shall be set in future orders from time to time” (id.). In February 2013, Justice Asarch received the initial affirmations and affidavits of legal services provided by all of the attorneys who participated in the proceeding.
*353 In essence, all that remained to be performed by the court, after the critical determinations were made by Justice Asarch that T.U. was an incapacitated person who needed a permanent guardian for both her personal needs and property management, and that a person who is not a family member should serve in that capacity, was the ministerial act formalizing Justice Asarch’s oral decision into an order and judgment. However, that oral decree, inter alia, appointing a permanent independent guardian was never reduced to writing and submitted to the court. Instead, due to exigent circumstances concerning T.’s property and care, a Temporary Guardian was appointed by Justice Asarch to protect T.’s interests; Justice Asarch, and the two subsequent judges assigned to this case after Justice Asarch’s shocking sudden passing, continued the Temporary Guardian’s status and role for efficiency and practical purposes.
The court has broad discretion in determining the reasonable amount to award as an attorney’s fee in a guardianship proceeding (see Matter of Alice D.; Matter of Theodore T, [Charles T.], 78 AD3d 955, 957 [2010]). In assessing the amount of reasonable compensation to be awarded for attorneys’ fees, the court is required to explain in writing its decision based upon the following factors:
“(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney’s experience, ability, and reputation, (3) the amount involved and the benefit flowing to the ward as a result of the attorney’s services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved” (Matter of Alice D. at 613-614; see Matter of Freeman, 34 NY2d 1 [1974]).
The current balance remaining in T.U.’s guardianship estate which can possibly be distributed as compensation and the reimbursement of expenses is $57,016.21. After reviewing the entire record and history of this proceeding, the court grants the following awards as reasonable compensation based upon the reasons and factors (see Matter of Loftman [Mae R.], 123 AD3d 1034, 1036 [2014]) set forth below:
Alan M. Párente, Esq., as court-appointed Temporary Guardian, is awarded the sum of $28,500, as agreed to by the parties, *354 for 110.30 hours of services rendered on behalf of T.U. (see Matter of Ruth S. [Sharon S.], 125 AD3d 978 [2d Dept 2015]). Mr. Párente has been admitted to practice for many years, and has been appointed by the court on many occasions in guardianship proceedings as a guardian, court-appointed counsel and court evaluator. Mr. Párente performed in an extraordinary manner under difficult circumstances because of the contentiousness between the U. siblings, the demands of the petitioner and the occasional lack of cooperation. Mr. Párente resolved several property management issues which arose during the course of this proceeding and was instrumental in insuring proper care for T. and preserving T.’s assets.
Jamie Butchin, Esq., who is employed by court-appointed counsel for T.U., Mental Hygiene Legal Service, has represented incapacitated individuals in this court on numerous occasions in an outstanding manner and her representation of T.U. was no different, always insuring that T.’s best interests would be heard and considered by the court and the Temporary Guardian as well as T.’s care manager. Accordingly, Mental Hygiene Legal Service is awarded reasonable compensation, in accordance with the hourly maximum amount it can be awarded, in the sum of $2,797.50 (37.3 hours at $75 per hour) for 37.3 hours of legal services rendered.
M. Kathryn Meng, Esq., appointed by Justice Asarch to be the Court Evaluator, is one of the preeminent guardianship and elder law attorneys in Nassau County and New York State and has been appointed by the court in many instances to serve in the capacities of guardian, counsel to the guardian, counsel to the alleged incapacitated person and court evaluator. Ms. Meng was asked in this proceeding to not only investigate and render an initial report; she was also required to issue multiple supplemental reports as a result of T.’s medical condition and the petitioner’s belief that T.’s best interests would be served by permitting her to relocate to Washington State. Ms. Meng also played the roles of peacemaker and diplomat in trying to effectuate cooperation among the parties to use their respective efforts on their mother’s behalf. Attorneys who have similar status and guardianship experience charge between $400 and $500 per hour for their services. Accordingly, M. Kathryn Meng, Esq., is awarded $21,118.02, inclusive of disbursements, as reasonable compensation for 73.4 hours of professional services rendered in this proceeding.
Virginia Belling, T.’s court-appointed geriatric care manager, is awarded reasonable compensation in the sum of $1,837.50 *355 for 12.25 hours of services performed between October 16, 2013 and November 14, 2013.
Petitioner’s counsel, Marc Alhonte (who has specialized in elder law for approximately 20 years), M.U.’s counsel, Joseph Tringali (an associate in a firm which specializes, in part, in guardianship/elder law), and Maria Begley, P.U.’s attorney (admitted to practice in 1977 and specializing in elder law and wills and trusts), are each awarded reasonable compensation as claims against the estate of T.U. since their respective representations of their clients’ interests clearly resulted in a genuine legal benefit to T., despite their adverse positions and cross-purposes.
Their individual legal efforts on behalf of their mother T. resulted in the preservation of T.’s assets, and T. receiving the proper care she needed due to her impairments. P.F.’s petition for an order appointing a guardian for T. was partially meritorious since T. was found to be an incapacitated person pursuant to Mental Hygiene Law § 81.02 (b). However, even though Justice Asarch found that the appointment of a guardian was necessary to protect T. from being harmed personally and financially, the court did not (and was not obligated to) appoint the petitioner as T.’s guardian (see Matter of Loftman at 1035). Justice Asarch rejected the petitioner’s argument that T.’s interests would best be served by permitting the petitioner to be T.’s guardian and authorizing the petitioner to relocate to Washington State with T, and instead found, after considering the testimony of M. and P.U. and two nonparty witnesses, as well as the testimony of the Court Evaluator and the care manager, that it would be in T.’s best interests to remain in New York in a skilled nursing facility located near her family members in Nassau County and not three thousand miles away from them.
The range of reasonable counsel fees to an attorney with Mr. Alhonte’s elder law experience is usually between $350 and $425 per hour; an associate with Mr. Tringali’s experience is usually awarded between $300 and $375 per hour, while an attorney with Ms. Begley’s experience would be entitled to be awarded reasonable attorneys’ fees between $325 and $400 per hour.
Accordingly, petitioner’s counsel, Marc Alhonte, Esq., is awarded the sum of $21,520, inclusive of disbursements, for 52 hours of legal services provided; Joseph Tringali, Esq., is awarded $37,592.04 for 90.70 hours of legal services provided; *356 and Maria Begley is awarded the total sum of $15,596 for 48.4 hours of legal services provided in this proceeding (see Matter of Ruth S.). The Temporary Guardian is directed to immediately pay to Ms. Begley, as part of the total owed to her, the sum of $927.50 for the services she rendered (as directed by Justice Asarch) for the transfer of a deed.
The court also awards petitioner P.F. the sum of $1,835.69, representing a reimbursement of the funds expended by her in connection with this proceeding.